107 F.3d 871
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Steven S. LAUGHLIN, Plaintiff-Appellant,
v.
UNITED TELEPHONE-SOUTHEAST, INC., Defendant-Appellee.
 No. 96-5295.
 United States Court of Appeals, Sixth Circuit.
 Feb. 27, 1997.
 
 Before: SILER, COLE, and VAN GRAAFEILAND,* Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Steven S. Laughlin appeals the district court's order awarding summary judgment to Defendant-Appellee United Telephone-Southeast, Inc. in this employment discrimination action filed pursuant to the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). For the following reasons, we affirm.
 
 I.
 
 2
 Appellant Steven Laughlin worked at United Telephone-Southeast, Inc. ("United") from December 27, 1971 until April 4, 1994. During his tenure, Laughlin held a variety of positions with United, but his ultimate job classification was Combination Cable Splicer/Installer Repairworker, a position that required, among other things, the ability to lift fifty pounds. This position was covered by United's Collective Bargaining Agreement ("CBA").
 
 
 3
 In early March 1992, Laughlin suffered a back injury while working at United's Greenville, Tennessee location. Dr. Horace Cupp performed surgery to correct the injury. Six months after the surgery, Laughlin was contacted by Rebecca Adams, United's Benefits Manager, and instructed to submit to an examination by Dr. Thomas Huddleston. After Laughlin's evaluation, Dr. Huddleston submitted his report to United, estimating that Laughlin would be able to return to work in two to three months with a twenty-five pound weight lifting restriction.
 
 
 4
 During the next several months, United requested that Laughlin submit to an additional physical evaluation and provide certification of his ability to return to work. Laughlin complied and his physician reported that he would be able to return, with a twenty-five pound weight restriction, by April 1993. Adams then contacted Laughlin on January 11, 1993, informing him that his benefits had expired earlier that month and the medical certification received by United indicated he would be unable to return to the "regular duties of Combination-Cable Splicer and Installer-Repairworker due to work restrictions." Consequently, Laughlin requested a leave of absence from January 11, 1993 until April 5, 1993.
 
 
 5
 Due to company workload and customer needs, a requisition was approved in February 1993 for the purpose of filling the position left vacant by Laughlin's leave of absence. A United employee, Phil Wilhoit, was offered and accepted the Combination Cable Splicer/Installer Repairworker position that Laughlin had occupied. Because no other positions were available when he sought to return from his first leave of absence in April 1993, Laughlin requested and received a one-year extension of leave pursuant to Article 9 of the CBA. During Laughlin's year-long leave of absence, no positions for which he was qualified became available. Consequently, Laughlin was terminated pursuant to the CBA on April 4, 1994. Later that month, Laughlin filed a grievance challenging the decision to terminate him. The Union concluded that the grievance was meritless.
 
 
 6
 Alleging he had been discriminated against because of his age and disability, Laughlin filed this action in United States District Court for the Eastern District of Tennessee. Sometime later, United filed a motion for summary judgment, which the district court granted. Laughlin immediately responded with a motion to set aside the judgment and order, requesting that the district court permit him to respond to United's summary judgment motion. The district court granted Laughlin's request; Laughlin and United then proceeded to file various motions and cross-motions for summary judgment. Ultimately, the district court granted United's motion for summary judgment[1]. Laughlin now appeals.
 
 II.
 
 7
 This court reviews de novo a district court's grant of summary judgment. City Management Corp. v. U.S. Chemical Corp., 43 F.3d 244, 250 (6th Cir.1994); Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 III.
 
 8
 The ADEA makes it unlawful for employers to discriminate against individuals on the basis of age. Allen v. Diebold, Inc., 33 F.3d 674, 676 (6th Cir.1994). The ADEA provides in pertinent part:
 
 
 9
 It shall be unlawful for an employer--
 
 
 10
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....
 
 
 11
 29 U.S.C. § 623(a)(1) (1994).
 
 
 12
 A plaintiff who lacks direct evidence of age discrimination may still establish a prima facie case of such discrimination by presenting evidence from which a jury may infer discriminatory intent behind the adverse employment action. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th Cir.1994). A prima facie case of age discrimination is established by introducing evidence sufficient to support, by a preponderance of the evidence, a finding that: (1) plaintiff was a member of the protected class; (2) plaintiff was subjected to an adverse employment action; (3) plaintiff was qualified for the position; and (4) plaintiff was replaced by or treated worse than a younger person. Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1390 (6th Cir.1993). Once established, this proof creates a presumption that the employer unlawfully discriminated against the employee. Id.; Manzer, 29 F.3d at 1081 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)).
 
 
 13
 Once the plaintiff has made a prima facie case, the burden shifts to the defendant to articulate some legitimate reason for the employment action. Manzer, 29 F.3d at 1082; Barnhart, 12 F.3d at 1390. If an employer offers a legitimate, nondiscriminatory reason for the employment action, the burden shifts back to the plaintiff who must then show that the defendant's proffered reason is a pretext. Barnhart, 12 F.3d at 1390. The ultimate burden of persuasion, however, remains at all times with the plaintiff, and in order to withstand a summary judgment motion the plaintiff must show that the employer's proffered explanation was not the true reason for the employment decision. Id. (citation omitted); Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314 (6th Cir.1989).
 
 
 14
 The evidence established that: (1) Laughlin was a member of the protected class; (2) Laughlin was terminated; (3) Laughlin was qualified for the position; and (4) Laughlin was replaced by a younger man. Hence, Laughlin established a prima facie case of age discrimination, and the burden shifted to United to proffer a legitimate, nondiscriminatory reason for Laughlin's termination.
 
 
 15
 According to United, increased customer demand created a need to fill the position left vacant by Laughlin's leave of absence. United further explained that Laughlin was replaced by Wilhoit, a younger man, as mandated by the CBA.[2] Consequently, the burden shifted back to Laughlin to provide evidence that United's proffered explanation was a pretext for age discrimination. Three methods exist in which a plaintiff may illustrate that the employer's proffered reasons are pretext: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the adverse employment action; or (3) the proffered reasons were insufficient to motivate the adverse employment action. Manzer, 29 F.3d at 1084 (citation omitted).
 
 
 16
 Laughlin asserts that several considerations illustrate pretext including the length of time that passed before United had a sudden need to fill the position, United's knowledge of Laughlin's ability to return without any restrictions by April 1993, and United's practice of using "contract labor" to fill employment shortages. Laughlin has provided no evidence that United did not have increased customer demands, nor does he offer evidence that United was motivated by his age, and not the CBA requirements, when it replaced him with Wilhoit. Because Laughlin failed to seriously challenge United's explanation for his termination, the district court correctly concluded that Laughlin failed to make a sufficient showing of pretext. See, e.g., Gagne, 881 F.2d at 314 ("Unless the plaintiff introduces counter-affidavits and argumentation that demonstrate that there is reason to disbelieve this particular explanation, there is no genuine issue of material fact.") (citation omitted); Simpson v. Midland-Ross Corp., 823 F.2d 937, 941 (6th Cir.1987) ("[M]ere conclusory allegations do not suffice to prove intentional discrimination based on age."); and see generally Allen, 33 F.3d at 677 ("The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions...."). Therefore, we conclude that summary judgment was proper.
 
 IV.
 
 17
 The ADA prohibits employment discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a) (1994). A qualified individual with a disability is one "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).
 
 
 18
 If a plaintiff lacks direct evidence of disability discrimination, that plaintiff can indirectly show such discrimination by establishing the elements of a prima facie case. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir.1996). The elements of a prima facie case in this context mirror the elements of a prima facie case in the age discrimination context. A prima facie case of disability discrimination is established by showing: (1) plaintiff was disabled; (2) plaintiff was qualified for the position with or without an accommodation; (3) plaintiff suffered an adverse employment decision in regard to the position in question; (4) a nondisabled person replaced the plaintiff or was selected for the position that the disabled person sought. Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 882 (6th Cir.1996); Roush v. Weastec, Inc., 96 F.3d 840, 843 (6th Cir.1996). The burden-shifting framework used in other employment discrimination cases is the same framework used in disability discrimination cases. Thus, if a disabled plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscrimatory explanation for the adverse employment action. Kocsis, 97 F.3d at 883. If the defendant meets its burden, the plaintiff must prove the defendant's reasons were merely a pretext. Monette v. Elec. Data Systems Corp., 90 F.3d at 1186. Like other employment discrimination claims, however, the ultimate burden of persuading the fact-finder that illegal discrimination took place remains at all times with the plaintiff. Id. at 1186-87.
 
 
 19
 Laughlin asserts that United violated the ADA by terminating him because of his back injury; consequently, he was required to establish the elements of a prima facie case. Monette, 90 F.3d at 1186. The district court concluded that Laughlin failed to establish a prima facie case because he could not prove he was disabled--the first and arguably most essential element--within the meaning of the ADA.
 
 
 20
 Pursuant to the ADA, an individual is considered to have a disability if the individual has an impairment that substantially limits one or more of the individual's major life activities, there is a record of such an impairment, or the individual is regarded by the individual's employer as disabled. 42 U.S.C. § 12102(2). The term "major life activities" includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i) (1996). The term "substantially limits" means inability to perform, or a severe restriction on the ability to perform as compared to the average person in the general population. 29 C.F.R. § 1630.2(j).
 
 
 21
 Laughlin admits that his back condition was temporary. "Generally, short-term, temporary restrictions are not substantially limiting." Roush, 96 F.3d at 843. Laughlin also admits that he had fully recovered from back surgery at the time his employment was terminated. Nonetheless, in an effort to make a prima facie claim, Laughlin asserts that he was disabled within the meaning of the ADA because he was "regarded as" disabled by United. The applicable regulations provide three ways in which a plaintiff can illustrate that the defendant employer regarded the plaintiff as disabled: (1) the individual may have an impairment which is not substantially limiting but is perceived by the employer as a substantially limiting impairment; (2) the individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or (3) the individual may have no impairments at all but is regarded by the employer as having a substantially limiting impairment. 29 C.F.R. § 1630.2(l).
 
 
 22
 Laughlin contends that United refused to allow him to return to work because of his injury. The undisputed fact that United refused to allow him to return with a twenty-five pound weight-lifting restriction in January 1993 lends support to this claim. Nonetheless, United's refusal to allow Laughlin to return does not require a finding that he was regarded as disabled. Laughlin offers no support, other than his bare allegation, for this contention; without more, he simply fails to prove that United regarded him as disabled. See, e.g., Kocsis, 97 F.3d at 884-85 (finding virtually no evidence to support plaintiff's claim that employer regarded her as disabled); but cf. Monette, 90 F.3d at 1187 (holding that employer's explanation for replacing plaintiff established that employer relied on plaintiff's disabled status when making its decision). Accordingly, we hold that the district court properly concluded that Laughlin failed to establish a prima facie case of disability discrimination. Because no genuine issue of material fact exists as to whether Laughlin established a prima facie case of disability discrimination, we affirm the district court's grant of summary judgment.
 
 V.
 
 23
 For the foregoing reasons, the district court's order granting the appellee's motion for summary judgment is AFFIRMED.
 
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland, United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 The district court concluded that Laughlin failed to establish a prima facie case of disability discrimination. The district court also determined that Laughlin established a prima facie case of age discrimination, but failed to offer any proof rebutting United's proffered reason for his termination
 
 
 [2]
 The super-seniority provisions of the CBA set forth the method in which positions governed by the CBA are filled